**Dale P. RENGSTORF, Respondent,**

v.

**Robert W. RICHARDS, Jr., et al., Appellants.**

**No. CX–87–1017.**

Court of Appeals of Minnesota.

Dec. 29, 1987.
Review Denied Feb. 24, 1988.

James E. O'Gorman, Detroit Lakes, for respondent.

Kevin T. Duffy, Thief River Falls, for appellants.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and IVERSON,* JJ.

## OPINION

LANSING, Judge.

Robert and Lisa Richards appeal a judgment granting Dale Rengstorf restitution of rural land he had conveyed to them pursuant to a contract for deed. We affirm.

## FACTS

In February 1986 Dale Rengstorf sold 133 acres of land in Pelican Rapids, Minnesota, to Robert Richards pursuant to a contract for deed. By February 1987 Richards had defaulted on a number of payments. In addition, Richards had spent $9,000 on improvements to the property, and the holders of mechanics' liens for that amount threatened to foreclose.

Rengstorf filed a notice of cancellation of the contract for deed in February 1987. Before the expiration of that notice, Richards requested mediation under the Farmer–Lender Mediation Act, Minn.Stat. §§ 583.20–583.32 (1986). Despite that request, Rengstorf brought an unlawful detainer action seeking restitution of the property. Neither Richards nor his attorney appeared at the May 1987 hearing on that action. They argued instead, in a post-hearing letter to the trial judge, that the unlawful detainer action was improper because, as family farmers, they were entitled to mandatory mediation.

Evidence at the unlawful detainer hearing included the parties' stipulation that in 1986 Richards had harvested about 30 round bales (1,200 lb.) of hay, worth about

$15 each. However, most of that hay was harvested by Ignatius Rick on a sharecrop arrangement. Richards would have testified that he personally harvested 400 smaller square bales of hay, about four tons. Rengstorf disputes that assertion, but we accept it as true for purposes of this appeal.

Rengstorf introduced considerable evidence that tended to show that the land was not suitable for farming: the soil quality is poor, Richards did not plant crops, the alfalfa was overrun by quack grass, Richardses owned only a few animals and were not engaged in breeding livestock, and the total harvest, even accepting Richards' assertions, was worth less than $1,000. A neighbor of Richards who baled the adjacent property estimated that Richards had baled only "a short 25 acres." The rest of the land was unused. Although the land could provide pasture for up to 25 cattle, it is unfenced.

The trial court found that Richardses were not operating a family farm and were therefore not entitled to mediation, and ordered restitution of the property.

## ISSUE

Was the trial court's finding that appellants are not entitled to mandatory mediation under the Farmer–Lender Mediation Act supported by the evidence?

## ANALYSIS

Under Minn.Stat. § 583.26, subd. 2(c) (1986), a debtor subject to a proceeding to terminate a contract for deed to purchase agricultural property may file a mediation request, the general effect of which is to stay the termination proceeding. *Id.*, subd. 5. Minn.Stat. § 583.22, subd. 2, defines "agricultural property" as "real property that is principally used for farming" as defined in Minn.Stat. § 500.24, subd. 2(a) (1986). Because section 500.24 in relevant part defines farming as the production of agricultural products or livestock, only property principally used in such production is covered by the act.

Additionally, to fall under the act, Richardses must be persons "operating a family farm." Minn.Stat. § 583.24, subd. 2(a)(1).

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

"Family farm" is defined as "an unincorporated farming unit owned by one or more persons residing on the farm or actively engaging in farming." Minn.Stat. § 500.24, subd. 2(b). Rengstorf argues that Richardses do not fall within this definition because they did not actively engage in farming. However, Richards did harvest some of the alfalfa himself, and the statute does not require a minimum level of farming activity. Furthermore, the statute by its terms applies to persons who *either* reside on a farming unit *or* actively engage in farming.

 However, Minn.Stat. § 583.24, subd. 2(b), states that the mediation act "does not apply to a debtor who owns and leases less than 60 acres with less than $20,000 in gross sales of agricultural products the preceding year." In an earlier opinion, a panel of this court held that in order to be protected by the act, a farmer must have $20,000 in gross sales *and* at least 60 acres. *Northern State Bank v. Efteland,* 409 N.W.2d 541, 543 (Minn.Ct.App.1987). Under the holding of *Efteland,* Richardses would not be entitled to protection of the act because they had far less than $20,000 in gross sales of farm products. We do not, however, rely solely on this holding.

The act's restrictions on foreclosure apply only to land principally used for farming, defined in relevant part as the production of agricultural products or livestock. Although the trial court did not make a specific finding that the land was not principally used for farming, the evidence compels such a finding.

Only 25 acres were baled, and the value of that harvest was minimal. Most of the land was idle and unsuited to either agricultural production or grazing. Although the parties lived on the property, Robert Richards continued operating a dental lab and Lisa Richards stayed home with two small children. Because the harvested alfalfa has minimal value, the property's value as a residence exceeds the value of its agricultural production. The property was not used principally for farming, and the trial court did not err in finding that Richardses were not entitled to mediation under the act.

Rengstorf also argues that a decision in favor of Richardses would be against the principles of equity, citing numerous examples of Richardses' bad-faith conduct. However, these principles are irrelevant to the question of statutory interpretation presented by this appeal, and bad faith exhibited outside the context of the mediation process itself does not obviate the mediation requirement. *Production Credit Association of Worthington v. Spring Water Dairy Farm, Inc.,* 407 N.W. 2d 88, 91–92 (Minn.1987).

## DECISION

The evidence supports the trial court's conclusion that appellants were not entitled to mediation.

Affirmed.