**In re the Marriage of Randall M. GRACHEK, petitioner, Appellant,**

v.

**Pamela D. GRACHEK, Respondent.**

No. A07–1226.

Court of Appeals of Minnesota.

June 17, 2008.

Lisa M. Lamm, Abrams & Smith, P.A., Minneapolis, MN, for appellant.

A. Larry Katz, Naomi S. Garfinkel, Katz, Manka, Teplinsky, Due & Sobol, Ltd., Minneapolis, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; HALBROOKS, Judge; and CRIPPEN, Judge.[*]

## OPINION

HALBROOKS, Judge.

By agreement, appellant and respondent's marriage-dissolution judgment and decree contained a waiver provision that precluded each party's ability to alter the spousal-maintenance award. Eleven years later, respondent moved for a cost-of-living adjustment to the maintenance award, which the district court granted. Appellant challenges this modification, contending that the waiver provision in the dissolution judgment precludes such an adjustment. But because the waiver language does not specifically establish that the parties intended to preclude a cost-of-living adjustment to spousal maintenance, we affirm.

## FACTS

Appellant and respondent were married in September 1983. They have one child together, who is presently age 18. Appellant and respondent's marriage was dissolved in a July 5, 1995 dissolution judgment and decree. The dissolution judgment requires appellant to pay respondent $2,500 per month in spousal maintenance. Appellant's spousal-maintenance obligation ceases upon the death of

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

respondent or, in the alternative, no later than October 1, 2021.

The judgment also contains language that addresses both parties' agreement to waive future modification of the maintenance award. The language of this provision states in full:

*Karon Language:*

9. Except for the maintenance provisions set forth in Paragraph 9, each party waives and is forever barred from receiving any additional spousal maintenance whatsoever from one another, and the Court is divested from having any jurisdiction whatsoever to award temporary or permanent spousal maintenance to either of the parties. Each party also waives the right to seek a change in either the amount or the duration of the spousal maintenance set forth in Paragraph 9. The limitation of maintenance as set forth in this paragraph is supported by consideration, namely each party's agreement to the terms of this Stipulation, and the maintenance and property settlement terms set forth herein.[1]

An appendix to the judgment addressed, among other things, cost-of-living adjustments (COLAs) to both maintenance and child support. The relevant language in appendix A states:

VII. COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE. Child support and/or spousal maintenance may be adjusted every two years based upon a change in the cost of living ... when the conditions of Minnesota Statutes, section

518.641, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518.641, and forms necessary to request or contest a cost of living increase are available from any court administrator.[2]

The language in the judgment that addresses appellant's child-support obligation specifically refers to this appendix indicating "(See Attached Appendix A)" at the end of the paragraph. Paragraphs 8 and 9, which establish spousal maintenance and address each party's waiver of future modifications to the maintenance award do not refer to the appendix.

In December 2006, approximately 11 years after the dissolution, respondent moved for a COLA to the spousal-maintenance award. In response, appellant argued that respondent had waived her right to a COLA to spousal maintenance pursuant to the waiver paragraph quoted above. The district court granted respondent's motion and increased appellant's maintenance obligation to $3,341 per month. This appeal follows.

**ISSUE**

Does the provision in the parties' dissolution judgment that limits the right of each party to alter the spousal-maintenance award preclude respondent-obligee's right to seek a cost-of-living adjustment to the award?

**ANALYSIS**

 A district court has broad discretion over issues of spousal maintenance, and generally we will not reverse a deci-

---

1. The reference in this waiver to the maintenance provisions set forth in "Paragraph 9" appears to be a typographical error. The terms addressing maintenance are contained in paragraph 8 of the dissolution judgment.

2. The appendix's reference to Minn.Stat. § 518.641 is to a prior version of the COLA statute. The legislature recodified a large portion of the statutes relating to maintenance and child support in 2006, including the statute on COLAs. Minn.Stat. § 518A.75 (2006) is the current COLA statute.

sion regarding maintenance absent an abuse of this discretion. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). But issues of subject-matter jurisdiction and the interpretation of statutes and stipulations in dissolution judgments are questions of law, which we review de novo. *Olmanson v. LeSueur County,* 693 N.W.2d 876, 879 (Minn.2005) (statutory interpretation); *Johnson v. Murray,* 648 N.W.2d 664, 670 (Minn.2002) (subject-matter jurisdiction); *Anderson v. Archer,* 510 N.W.2d 1, 3 (Minn.App.1993) (stipulations in dissolution judgments).

■■■ Parties to a dissolution action have a general statutory right to seek modification of a maintenance award under Minn.Stat. § 518A.39 (2006). But the parties are also permitted to waive this statutory right under certain circumstances. Such a waiver agreement is frequently referred to as a *Karon* waiver after *Karon v. Karon,* 435 N.W.2d 501 (Minn.1989) (superseded in part by statute).[3] To be effective, a *Karon* waiver must contain both an express waiver of the right to seek modification and an express statement divesting the district court of further jurisdiction over the matter. *Loo v. Loo,* 520 N.W.2d 740, 745 n. 5 (Minn.1994). In addition, the district court must find that the agreement is fair and equitable and supported by consideration and that both parties have fully disclosed their assets and liabilities. Minn.Stat. § 518.552, subd. 5 (2006). The district court must then incorporate the parties' waiver agreement and its specific factual findings in the dissolution judgment and decree. *Butt v. Schmidt,* 747 N.W.2d 566, 573 (Minn.2008); *see also Santillan v. Martine,* 560 N.W.2d 749, 752 (Minn.App.1997) (holding that a purported

*Karon* waiver was ineffective because the dissolution judgment did not contain the findings required by section 518.552, subd. 5).

A spousal-maintenance obligee has a statutory right to seek a cost-of-living adjustment (COLA) to a maintenance award. Minn.Stat. § 518A.75, subd. 1(a) (2006). The statute provides that "[a]n order establishing, modifying, or enforcing maintenance or child support shall provide for a biennial adjustment in the amount to be paid based on a change in the cost of living." *Id.* But a district court may approve a waiver of a cost-of-living adjustment in a maintenance order under certain circumstances, including when the parties "agree in writing" to such a waiver. *Id.,* subd. 1(b) (2006).

Here, the issue of whether the parties' *Karon* waiver precludes non-COLA modification of the maintenance award is not before us. What is disputed is whether the waiver language precludes respondent from seeking a COLA to the award. This is a case of first impression.

■■■ The right to request a COLA to a maintenance award and the right to seek modification of a maintenance award because of a substantial change in circumstances that makes the maintenance award unreasonable and unfair are contained in separate statutory provisions. *Compare* Minn.Stat. § 518A.39 (modification of maintenance awards) *with* Minn.Stat. § 518A.75 (COLA). A party may request a COLA without seeking to modify the maintenance award and vice versa. Accordingly, we have treated the right to seek modification of a spousal-maintenance

**3.** The *Karon* court also stated that, when the parties agree to waive modification of a maintenance award, district courts are required to ensure that the waiver is "fair and reasonable to all." 520 N.W.2d at 503. After *Karon,* the

legislature enacted specific requirements that must accompany such waivers. Minn.Stat. § 518.552, subd. 5 (2006). These statutory requirements now govern such waivers. *Loo v. Loo,* 520 N.W.2d 740, 745 n. 6 (Minn.1994).

award as distinct from the right to request a COLA to the award. *See McClenahan v. Warner,* 461 N.W.2d 509, 511 (Minn.App. 1990) (stating that a COLA request is not the same as a modification proceeding); *Hadrava v. Hadrava,* 357 N.W.2d 376, 378–79 (Minn.App.1984) (addressing request for modification separately from request for COLA).

The requirements that must be met before a maintenance award can be modified pursuant to each of these respective statutes also differ. A COLA occurs automatically every two years unless the district court finds that the obligor's income cannot support the adjustment or the obligor requests a hearing on the matter and satisfactorily establishes the same. Minn. Stat. § 518A.75 (2006). But a district court has much more discretion when modifying a maintenance award. *See Youker v. Youker,* 661 N.W.2d 266, 269 (Minn.App. 2003), *review denied* (Minn. Aug. 5, 2003). Generally, modification of a maintenance award is proper if the current award has been shown to be unreasonable and unfair based on certain conditions discussed in the statute governing modification. Minn. Stat. § 518A.39, subd. 2.

 Further, the purpose of, or intent behind, each statutory right is different. The COLA statute is designed to ensure that an award of child support or spousal maintenance continues to meet an obligee's needs in the face of inflationary pressures. *See Blomgren v. Blomgren,* 367 N.W.2d 918, 921 (Minn.App.1985) (stating that the purpose of the COLA statute is not to account for the improved financial circumstances of the obligor, "but to meet children's needs which are also rising with inflation."). In other words, the COLA statute attempts to prevent an award of child support or maintenance that was determined to be appropriate at the time it was set (either by the district court or the

agreement of the parties) from becoming inequitable due to an inflation-based degradation of its relative value. On the other hand, the purpose of a modification proceeding is to allow the district court to rectify an award that a party can show has become inequitable due to any number of post-dissolution changes in the parties' circumstances. *See* Minn.Stat. § 518A.39, subd. 2; *First Nat'l Bank of the N. v. Auto. Fin. Corp.,* 661 N.W.2d 668, 670 (Minn.App.2003) stating that courts "focus on the words of the statute to 'ascertain and effectuate the intention of the legislature.'" (quoting Minn.Stat. § 645.16 (2002)).

The independent nature of these two statutory rights is particularly important in the context of the attempted waiver of one or both rights. The supreme court has indicated that, if the parties to a dissolution action agree to waive a statutory right to alter a maintenance award, they must incorporate clear and express terms in the dissolution judgment evidencing their specific intention to waive the identified right. *See Loo,* 520 N.W.2d at 745 (Minn.1994) (stating that "courts should not assume that parties ... bargained to supplant the statutory modification procedure without a clear or express statement" indicating as much). We have also stated that we will not infer a waiver of a statutorily conferred right to alter a maintenance award "in the absence of a clear intent to waive" the right. *Keating v. Keating,* 444 N.W.2d 605, 607–08 (Minn.App.1989), *review denied* (Minn. Oct. 25, 1989).

Here, the parties did not state a clear and specific intent to waive respondent's right to a COLA. Their *Karon* provision is couched in broad, general terms. It states that each party waives the right to "seek a change" to the terms of the maintenance or to "receiv[e] any additional" maintenance. Appellant argues that because the waiver language states that the receipt of

"any additional" maintenance is prohibited, it unambiguously includes any future CO-LAs to the established spousal mainte-nance. *See Starr v. Starr,* 312 Minn. 561, 562–63, 251 N.W.2d 341, 342 (Minn.1977) (stating that when terms in a dissolution judgment are unambiguous, they must be construed according to their plain mean-ing). We disagree that this language un-ambiguously evidences the parties' intent to waive respondent's right to request fu-ture COLAs to the maintenance award.

■ Subject to certain exceptions re-garding children, stipulations in dissolution judgments are treated as contracts to which the normal rules of construction ap-ply. *Compare Shirk v. Shirk,* 561 N.W.2d 519, 521 (Minn.1997), *with Tammen v. Tammen,* 289 Minn. 28, 30, 182 N.W.2d 840, 841–42 (1970). Here, appellant and respondent labeled their waiver a *Karon* waiver. The *Karon* case addressed waiver of a party's right to modify a maintenance award but did not concern consideration of COLAs. *See Karon,* 435 N.W.2d at 503–04 (discussing only waiver of the right to modify maintenance). While a label or title is not determinative, the parties' use of the heading "*Karon* waiver" here does not support the argument that they clearly intended it to preclude respondent's right to seek a COLA. *See Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267, 271 (Minn.2004) (stating that, when inter-preting a written instrument, "the intent of the parties is determined from the plain language of the instrument itself"); *see also Ideal Mut. Ins. Co. v. Lucas,* 593 F.Supp. 466, 469 (N.D.Ga.1983) ("While the designation of a term in a contract does not conclusively determine its legal status, the label is some evidence of the contracting parties' intent.").

Furthermore, appendix A to the dissolu-tion judgment specifically provides for a COLA to the awards for child support and maintenance. This appendix is expressly referred to in the portion of the judgment that addresses appellant's child-support obligation. The paragraph in the judg-ment setting appellant's spousal-mainte-nance obligation at $2,500 per month does not contain a similar reference to the ap-pendix. But the maintenance paragraph also lacks an explicit statement that the appendix A reference to a COLA to spous-al maintenance is precluded by agreement. The parties' *Karon* waiver is silent as to its effect, if any, on the appendix's provi-sion addressing COLAs. Thus, contrary to appellant's argument, the intended scope of the bar to "any additional" spous-al-maintenance language in the waiver is ambiguous when evaluated in the context of the entire dissolution judgment. *See Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 916 (Minn.1990) (reiterating the principle that language in a contract "should never be interpreted in isolation, but rather in the context of the entire agreement."); *Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 352, 205 N.W.2d 121, 124 (1973) (stating that "[w]ords, phrases, or sentences [in a con-tract] cannot be dissected and read in ... isolation"). We will not infer a specific intention based on such general language. *See Keating,* 444 N.W.2d at 607–08.

We therefore conclude that the language used in the parties' *Karon* waiver does not clearly and expressly demonstrate that they intended to waive the statutory right to seek a COLA to spousal maintenance.

## DECISION

Because the parties' spousal-mainte-nance waiver provision did not clearly and expressly manifest their intent to waive the statutory right to a cost-of-living ad-justment to a spousal-maintenance award, the district court acted within its discretion

by granting respondent's request for a cost-of-living adjustment to the award.

**Affirmed.**